# UNITED STATES DISTRICT COURT
# WESTERN DISTRICT OF NORTH CAROLINA
# CHARLOTTE DIVISION
# 3:17-cv-485-FDW

| | |
|---|---|
| DANNY R. HEMBREE, JR., ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| vs. ) | **ORDER** |
| ) | |
| FNU BRANCH, et al., ) | |
| ) | |
| Defendants. ) | |

**THIS MATTER** is before the Court on initial review of *pro se* Plaintiff's Complaint, (Doc. No. 1). Plaintiff has filed an Application to Proceed in District Court Without Prepaying Fees or Costs. (Doc. No. 2).

**I.    BACKGROUND**

*Pro se* Plaintiff filed this civil rights suit pursuant to 42 U.S.C. § 1983 and North Carolina law while incarcerated at the North Carolina Department of Public Safety's (NC DPS) Central Prison.[1] He names as Defendants the Gaston County Sheriff's Office, Gaston County Sheriff's Deputies Branch and Whitlock, Sergeant Hughes, control booth deputy Jane Doe 1, medical department worker Jane Doe 2, Medical Director/Administrator Dr. Flitt, Nurse Kim, Screening Nurse Jane Doe 3, Shift Captain John Doe, Major John Do, and Gaston County Sheriff Cloniger.

Liberally construing the Complaint and accepting the allegations as true, Plaintiff was transported from DPS Central Prison to the Gaston County Jail on March 8 or 9, 2016. Plaintiff was questioned by the intake deputy, Sergeant Price, upon arriving at the jail with regards to his

---

[1] Plaintiff is presently incarcerated at the Alexander Correctional Institution.

1

health status and medical needs. Plaintiff told Price that he has stage-4 liver disease, diabetes, neuropathy, and a heart ailment. He complained of shortness of breath, body aches, and pains. Price told Plaintiff that he would be seen by medical within a few days as a routine matter. DPS officers turned over Plaintiff's medications including Neurontin as well as the medical protocol instructing the Jail how and when to administer Plaintiff's medications.

A short time later, Plaintiff was escorted to medical for a routine intake screening by a female unknown nurse. The nurse told Plaintiff that Dr. Flitt had denied Plaintiff's Neurontin for neuropathy because Dr. Flitt had banned it in the Jail. The nurse said it was Dr. Flitt's prerogative to deny the medication because he is the medical administrator/director of the Jail. Plaintiff asked for ibuprofen or Tylenol for his body aches, pains, and low-grade fever. The nurse said she would call Dr. Flitt for approval but that they usually did not treat low-grade fever. Plaintiff was escorted to his cell.

Approximately 6 hours later, Plaintiff was called over the intercom by Jane Doe 1 to have his sugar checked. He told Jane Doe 1 that he was refusing all medical treatment until Dr. Flitt approved the Neurontin. Jane Doe 1 said that Plaintiff could not refuse because he was in jail. Five or 10 minutes later, Deputies Branch and Whitlock entered Plaintiff's cell while he was lying passively on the bottom bunk. They told him to get up to go see the nurse. Plaintiff said he was refusing medical treatment. The deputies grabbed Plaintiff by his arms and "violently snatched" him off of his bunk and forced him to the wall headfirst, causing a 3 ½ inch laceration to his eyebrow which bled profusely. He also suffered a large contusion on the right side of his face, eye, and injury to his neck and shoulder. At no time did Plaintiff attempt to assault or batter the deputies in any way or harm any Jail employee or act in a way that merited the use of force. Plaintiff was handcuffed behind his back as his face bled profusely. The deputies forced him to the medical

2

department against his will.

Sergeant Hughs, Deputy Jane Doe 2, and Nurse Kim were at the medical department when Plaintiff arrived there. Nurse Kim directed Deputies Branch and Whitlock to put Plaintiff in a chair where they forcefully restrained him. Nurse Kim cleaned and treated Plaintiff's facial laceration. He was in a lot of pain which caused him to be emotional and loudly express his feelings by using profanity. Plaintiff told Nurse Kim that he was refusing all medical care. She said that he could not refuse and that she had an obligation under the health codes to clean up the blood and stop the bleeding to prevent danger from blood-borne pathogens. Plaintiff told her to go ahead but to stop bothering him after the wound stopped bleeding. Nurse Kim said she intended to check Plaintiff's vital signs and take a blood sample from his finger to check his sugar. Plaintiff stated "no, you not, I do not consent to any further treatment, when you through with my eyebrow." (Doc. No. 1-1 at 11). Nurse Kim steri-stripped Plaintiff's laceration and Sergeant Hughes took a picture while a clean white bandage hid the seriousness of his injury. Plaintiff asked Hughes to take a picture of the actual injury but Hughes refused.

Nurse Kim then took Plaintiff's blood pressure and attempted to take his temperature but Plaintiff refused, reiterating that he would not accept any treatment until he was provided his Neurontin. Nurse Kim threatened to take his temperature rectally if he would not cooperate. Plaintiff opened his mouth for the thermometer to avoid further assault and humiliation. Nurse Kim then took a blood sample from Plaintiff's finger to check his sugar. Plaintiff was forcefully escorted back to his cell.

Plaintiff remained at the Jail for three to seven days after the assault, battery, and denial of medication. He continued to refuse medical care during that time but was not assaulted further. Dr. Flitt continued to refuse to follow Plaintiff's prescribed medical protocol and refused to dispense

3

his medication, which resulted in extreme, intense, and unnecessary pain.

Plaintiff returned to Central Prison on March 13 or 17, 2016. At that time, he was screened by medical staff whom he advised that he had been assaulted, battered, and denied prescribed medication. Plaintiff was treated by his long-term primary care doctor, Vincent Wilson, within 72 hours after he was referred to Central Prison's urgent care unit. Dr. Wilson treated Plaintiff's neck, back, and facial injuries with ibuprofen and instructed him on how to help speed his recover and prevent further damage. Plaintiff was also started back on all of his medications including Neurontin for his extremely painful neuropathy.

Plaintiff seeks declaratory judgment, injunctive relief, compensatory and punitive damages, a jury trial, any and all other relief that the Court deems proper.

## II. MOTION TO PROCEED *IN FORMA PAUPERIS*

The Court first address Plaintiff's motion to proceed *in forma pauperis*. Plaintiff's affidavit shows that he has no monthly income, no assets, and no expenses. (Doc. No. 2 at 1-4). He does not expect any major changes to his monthly expenses, assets, or liabilities in the next year. (Id. at 6). He does not expect to pay any expenses or attorney's fees in conjunction with this lawsuit. (Id.). He explains his inability to pay the costs of these proceedings as follows "I am a State Prisoner incarcerated at Central Prison in Raleigh, N.C…." (Id.). Plaintiff's Prisoner Trust Account Statement reveals that his balance is well below the filing fee amount. (Doc. No. 6). The Court is satisfied that Plaintiff does not have sufficient funds to pay the filing fee. The Court will, therefore, grant the motion and permit Plaintiff to proceed *in forma pauperis*.

## III. STANDARD OF REVIEW

Because Plaintiff is a prisoner proceeding *in forma pauperis*, the Court must review the Complaint to determine whether it is subject to dismissal on the grounds that it is "(i) frivolous or

malicious; (ii) fails to state a claim on which relief may be granted; or (iii) seeks monetary relief against a defendant who is immune from such relief." 28 U.S.C. § 1915(e)(2)(B). In its frivolity review, a court must determine whether the Complaint raises an indisputably meritless legal theory or is founded upon clearly baseless factual contentions, such as fantastic or delusional scenarios. Neitzke v. Williams, 490 U.S. 319, 327-28 (1989). A complaint should not be dismissed for failure to state a claim "unless 'after accepting all well-pleaded allegations in the plaintiff's complaint as true and drawing all reasonable factual inferences from those facts in the plaintiff's favor, it appears certain that the plaintiff cannot prove any set of facts in support of his claim entitling him to relief.'" Veney v. Wyche, 293 F.3d 726, 730 (4th Cir. 2002) (quoting Edwards v. City of Goldsboro, 178 F.3d 231, 244 (4th Cir. 1999)).

A *pro se* complaint must be construed liberally. Haines v. Kerner, 404 U.S. 519, 520 (1972); see also Smith v. Smith, 589 F.3d 736, 738 (4th Cir. 2009) ("Liberal construction of the pleadings is particularly appropriate where … there is a *pro se* complaint raising civil rights issues."). However, the liberal construction requirement will not permit a district court to ignore a clear failure to allege facts in his complaint which set forth a claim that is cognizable under federal law. Weller v. Dep't of Soc. Servs., 901 F.2d 387 (4th Cir. 1990). A *pro se* complaint must still contain sufficient facts "to raise a right to relief above the speculative level" and "state a claim to relief that is plausible on its face." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555, 570 (2007); see Ashcroft v. Iqbal, 556 U.S. 662 (2009) (the Twombly plausibility standard applies to all federal civil complaints including those filed under § 1983). This "plausibility standard requires a plaintiff to demonstrate more than a sheer possibility that a defendant has acted unlawfully." Francis v. Giacomelli, 588 F.3d 186, 193 (4th Cir. 2009) (internal quotation marks omitted). He must articulate facts that, when accepted as true, demonstrate he has stated a claim entitling him to relief.

5

Id.

 IV. DISCUSSION

(1) **Parties**

 (A) **Individuals Not Named as Defendants**

The Federal Rules of Civil Procedure provide that, "[i]n the complaint the title of the action shall include the names of all the parties." Fed. R. Civ. P. 10(a); see Myles v. United States, 416 F.3d 551 (7th Cir. 2005) ("to make someone a party the plaintiff must specify him in the caption and arrange for service of process."). Although *pro se* litigants are entitled to have their pleadings liberally construed, Haines, 404 U.S. at 520, "[d]istrict judges have no obligation to act as counsel or paralegal to *pro se* litigants," Pliler v. Ford, 542 U.S. 225 (2004).

The body of the Complaint contains allegations against individuals who are not named as defendants in the caption as required by Rule 10(a). This failure renders Plaintiff's allegations against them nullities. See, e.g., Londeree v. Crutchfield Corp., 68 F.Supp.2d 718 (W.D. Va. Sept. 29, 1999) (granting motion to dismiss for individuals who were not named as defendants in the compliant but who were served). Accordingly, the allegations against unnamed individuals will be dismissed without prejudice.

 (B) **No Allegations**

The Federal Rules of Civil Procedure require a short and plain statement of the claim. Fed. R. Civ. P. 8(a)(2). Conclusory allegations, unsupported by specific allegations of material fact are not sufficient. Simpson v. Welch, 900 F.2d 33, 35 (4th Cir. 1990). A pleader must allege facts, directly or indirectly, that support each element of the claim. Dickson v. Microsoft Corp., 309 F.3d 193, 201-02 (4th Cir. 2002).

Plaintiff names several individuals as Defendants against whom he does not allege any

6

facts. These claims are insufficient to proceed and will be dismissed.

**(2)** **Excessive Force**

Claims that police officers used excessive force to seize a citizen, or were present and failed to intervene, are cognizable under § 1983. Graham v. Connor, 490 U.S. 386 (1989); see County of Los Angeles, Ca. v. Mendez, 137 S.Ct. 1539, 1546 (2017) (Graham sets forth the "settled and exclusive framework for analyzing whether the force used in making a seizure complies with the Fourth Amendment."). Fourth Amendment jurisprudence "has long recognized that the right to make an arrest or an investigatory stop necessarily carries with it the right to use some degree of physical coercion or threat thereof to effect it." Graham, 490 U.S. 386, 396 (1989). Whether a use of force is "reasonable" under the Fourth Amendment requires balancing the nature and quality of the intrusion on the individual's Fourth Amendment interests against the countervailing governmental interests. Tennessee v. Garner, 471 U.S. 1, 7-8 (1985); United States v. Place, 462 U.S. 696, 703 (1983). Reasonableness is an "objective" inquiry that pays "careful attention to the facts and circumstances of each particular case" including "the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether he is actively resisting arrest or attempting to evade arrest by flight." Graham, 490 U.S. at 396. "The 'reasonableness' of a particular use of force must be judged from the perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight." Id.; Saucier v. Katz, 533 U.S. 194, 207 (2001), *overruled on other grounds by* Pearson v. Callahan, 555 U.S. 223 (2009) (excessive force claims are evaluated for reasonableness based on the information the officers had when the conduct occurred); Scott v. United States, 436 U.S. 128, 137-39 (1978) (officer's subjective state of mind does not invalidate action as long as the circumstances, viewed objectively, justify it); Terry v. Ohio, 392 U.S. 1, 20-22 (1968) (reasonableness is viewed from the

7

perspective of a reasonable officer on the scene without the benefit of hindsight). The reasonableness inquiry is dispositive: "When an officer carries out a seizure that is reasonable, taking into account all relevant circumstances, there is no valid excessive force claim." Mendez, 137 S.Ct. at 1547.

Plaintiff alleges that Branch and Whitlock snatched him from his bunk and slammed him face-first into a wall, resulting in profuse bleeding, a 3 ½ inch laceration to his face, bruises, and injury to his neck and back. These claims are sufficient to proceed. However, the remainder of Plaintiff's allegations, *i.e.,* that he was held in a chair while Nurse Kim treated his laceration and checked his temperature and blood sugar, are insufficiently serious to state a claim for the use of excessive force. Moreover, Plaintiff fails to allege that any of the other Defendants were present and in a position to intervene when Branch and Whitlock slammed him into a wall.

Therefore, Plaintiff's excessive force claim will proceed against **Defendants Branch** and **Whitlock** and will be dismissed as to the remaining Defendants.

**(3)** **Medical Deliberate Indifference**

"[T]he treatment a prisoner receives in prison and the conditions under which he is confined are subject to scrutiny under the Eighth Amendment," Helling v. McKinney, 509 U.S. 25, 31 (1993). In its prohibition of "cruel and unusual punishments," the Eighth Amendment places restraints on prison officials, who may not, for example, use excessive physical force against prisoners. Hudson v. McMillian, 503 U.S. 1, 1 (1992).

A prison official violates the Eighth Amendment only when two requirements are met. First, the deprivation alleged must be, objectively, "sufficiently serious," Wilson v. Seiter, 501 U.S. 294, 298 (1991); see also Hudson, 503 U.S. at 5, and must result in the denial of "the minimal civilized measure of life's necessities," Rhodes v. Chapman, 452 U.S. 337, 347 (1981). The second

8

requirement is subjective and requires that a prison official must have a "sufficiently culpable state of mind." Wilson, 501 U.S. at 297, 302-03; Hudson, 503 U.S. at 5, 8. An actionable deliberate indifference claim does not require proof that the plaintiff suffered an actual injury. Instead, it is enough that the defendant's actions exposed the plaintiff to a "substantial *risk* of serious harm." Farmer v. Brennan, 511 U.S. 825, 837 (1994) (emphasis added). The official "must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." Farmer, 511 U.S. at 837; Johnson v. Quinones, 145 F.3d 164, 167 (4th Cir. 1998).

To state a *prima facie* case of deliberate indifference to a serious medical need, a plaintiff must show that he had serious medical needs and that the defendant acted with deliberate indifference to those needs. Heyer v. United States Bureau of Prisons, 849 F.3d 202, 210 (4th Cir. 2017) (citing Iko v. Shreve, 535 F.3d 225, 241 (4th Cir. 2008)). A "serious medical need" is "one that has been diagnosed by a physician as mandating treatment or one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention." Iko, 535 F.3d at 241 (internal quotation marks omitted). To constitute deliberate indifferent to a serious medical need, "the treatment [a prisoner receives] must be so grossly incompetent, inadequate, or excessive to shock the conscience or to be intolerable to fundamental fairness." Miltier v. Beorn, 896 F.2d 848, 851 (4th Cir. 1990), *overruled on other grounds by* Farmer, 511 U.S. at 825. However, mere negligence or malpractice does not violate the Eighth Amendment. Miltier, 896 F.2d at 852.

Plaintiff alleges that Dr. Flitt and Screening Nurse Jane Doe 3 failed to follow prescribed medical protocol and refused to administer Plaintiff's prescribed medication for extremely painful diagnosed condition or provide alternative medication.

These allegations are sufficient to proceed for deliberate indifference to a serious medical need by Dr. Flitt and Nurse Jane Doe 3. Plaintiff has not provided adequate identifying information to permit service of process on Jane Doe 3 at this time. However, he may attempt to serve her should he learn her identifying information during discovery.[2] Therefore, Plaintiff's medical deliberate indifference claim will be permitted to proceed against **Defendant Dr. Flitt** at this time and Plaintiff may attempt service on Jane Doe 3 if and when he is able to provide adequate identifying information. If he is unable to do so, the claim against Jane Doe 3 will be dismissed.

**(3)** **Unwanted Medical Treatment**

The Fourth Amendment protects "[t]he right of the people to be secure in their persons ... against unreasonable searches and seizures." U.S. Const. amend. IV. The applicability of the Fourth Amendment turns on whether "the person invoking its protection can claim a 'justifiable,' a 'reasonable,' or a 'legitimate expectation of privacy' that has been invaded by government action." Hudson v. Palmer, 468 U.S. 517, 525 (1984) (quoting Smith v. Maryland, 442 U.S. 735, 740 (1979)). A prisoner maintains some legitimate expectation of privacy in his person. King v. Rubenstein, 825 F.3d 206, 214 (4th Cir. 2016). A court is to consider the following factors to determine the reasonableness of a search: "the scope of the particular intrusion, the manner in which it is conducted, the justification for initiating it, and the place in which it is conducted." Bell v. Wolfish, 441 U.S. 520, 559 (1979).

Further, "a competent person has a constitutionally protected liberty interest in refusing unwanted medical treatment." Cruzan v. Dir., Mo. Dep't of Health, 497 U.S. 261, 278 (1990). This

---

[2] John Doe suits are permissible only against "real, but unidentified, defendants." Schiff v. Kennedy, 691 F.2d 196, 197 (4th Cir. 1982). The designation of a John Doe defendant "is generally not favored in federal courts; it is appropriate only when the identity of the alleged defendant is not known at the time the complaint is filed and the plaintiff is likely to be able to identify the defendant after further discovery." Njoku v. Unknown Special Unit Staff, 217 F.3d 840, 840 (4th Cir. 2000).

liberty interest survives conviction and incarceration. Washington v. Harper, 494 U.S. 210, 221–22 (1990) (recognizing an individual's "significant liberty interest in avoiding the unwanted administration" of a specific form of medical treatment); Hogan v. Carter, 85 F.3d 1113, 1116 (4th Cir. 1996) (*en banc*) (citing Harper, 494 U.S. 221–22). In this context, prison officials may override this right when treatment is "reasonably related to legitimate penological interests." Harper, 494 U.S. at 223 (citing Turner, 482 U.S. at 89). The fit between the jail's legitimate interests and its policy need not be perfect in order to survive scrutiny, it need only be rational. Waterman v. Farmer, 183 F.3d 208, 215 (3d Cir.1999); see also Turner, 482 U.S. at 89-90 ("a regulation cannot be sustained where the logical connection between the regulation and the asserted goal is so remote as to render the policy arbitrary or irrational."). "This is true even when the constitutional right claimed to have been infringed is fundamental, and the State under other circumstances would have been required to satisfy a more rigorous standard of review." Harper, 494 U.S. at 223 (citation omitted).

Plaintiff alleges that Nurse Kim forcibly cleaned and closed his facial laceration, tested his blood sugar with a finger stick, and measured his temperature and blood pressure while Deputues Branch and Whitlock held him in a chair in the presence of Sergeant Hughs and Deputy Jane Doe 2.

Although there appears to be a rational penological justification for cleaning up blood and closing an open wound, the reasonableness and rational justification for forcing Plaintiff to undergo further procedures including a blood test, blood pressure, and temperature measurements are less clear at this early stage in the proceedings. Therefore, Plaintiff's Fourth and Fourteenth Amendment claims that he was forced to undergo blood sugar, blood pressure, and temperature

11

tests shall proceed against **Defendants Branch, Kim, Whitlock,** and **Hughes**. Plaintiff may attempt service on Jane Doe 2 if and when he is able to provide adequate identifying information. If he is unable to do so, the claim against Jane Doe 2 will be dismissed.

**(4)** **Supervisors**

A state official can be in a § 1983 suit in three ways: in his personal capacity, his official capacity, or in a more limited way, his supervisory capacity. King, 825 F.3d at 223–24. For personal liability, "it is enough to show that the official, acting under color of state law, caused the deprivation of a federal right." Kentucky v. Graham, 473 U.S. 159, 166 (1985). In an official-capacity suit, however, "[m]ore is required:" the suit is "treated as a suit against the entity," which must then be a "'moving force' behind the deprivation," id. (quoting Polk County v. Dodson, 454 U.S. 312, 326 (1981)); thus, the entity's "'policy or custom' must have played a part in the violation of federal law," id. (quoting Monell v. Dep't of Soc. Servs. of City of New York, 436 U.S. 658, 694 (1978)). Meanwhile, a supervisor can be liable where (1) he knew that his subordinate "was engaged in conduct that posed a pervasive and unreasonable risk of constitutional injury;" (2) his response showed "deliberate indifference to or tacit authorization of the alleged offensive practices;" and (3) that there was an "affirmative causal link" between his inaction and the constitutional injury." Shaw v. Stroud, 13 F.3d 791, 799 (4th Cir. 1994) (internal quotation marks omitted).

Plaintiff alleges that Sheriff Cloniger and Major Doe failed to protect him from assault and battery by having policies in place to prevent assault and battery, failed to enforce policies or provide basic training of jail staff re right to refuse medical treatment, failed to have in place and/or enforce policy to assure that, when a prisoner refuses to leave the cell for any reason, a trained

supervisor be present to prevent assault and battery by overzealous staff. This claim is sufficient to proceed against **Sheriff Cloniger**[3] and Major John Doe. Plaintiff may attempt service on Major John Doe if and when he is able to provide adequate identifying information. If he is unable to do so, the claim against Major John Doe will be dismissed.

**(5)** **North Carolina Claims**

The district courts have supplemental jurisdiction over claims that are so related to the claims over which the court has original jurisdiction that they "form part of the same case or controversy under Article III of the United States Constitution." 28 U.S.C. § 1367(a). A court may decline to exercise supplemental jurisdiction if: (1) the claim raises a novel or complex issue of state law; (2) the claim substantially predominates over the claim or claims over which the district court has original jurisdiction; (3) the district court has dismissed all claims over which it has original jurisdiction; or (4) in exceptional circumstances, there are other compelling reasons for declining jurisdiction. 28 U.S.C. § 1367(c)(1)-(4).

Plaintiff alleges that the Defendants committed assault and battery and negligence under North Carolina law. Because Plaintiff's North Carolina assault, battery, and negligence claims arise out of the same incidents that have passed initial review on federal claims of excessive force, medical deliberate indifference, and forcing him to undergo unwanted medical treatment, the Court will exercise supplemental jurisdiction over Plaintiff's North Carolina assault, battery, and negligence claims at this time.

---

[3] Plaintiff's claim against the Gaston County Sheriff's Office is duplicative of the official-capacity claims against Sheriff Coniger and they will therefore be dismissed. See, e.g., Love–Lane v. Martin, 355 F.3d 766, 783 (4th Cir. 2004).

## V. CONCLUSION

For the reasons stated herein, the Complaint is sufficient to proceed against Defendants **Branch** and **Whitlock** for the use of excessive force; against Dr. **Flitt** for medical deliberate indifference, against Defendants **Branch, Hughes, Kim,** and **Whitlock** for unwanted medical care, and the supervisory claims against Sheriff **Cloniger**. The Court will also exercise supplemental jurisdiction over Plaintiff's assault, battery, and negligence claims against these Defendants. Should Plaintiff be able to identify Defendants Jane Doe 2, Jane Doe 3, and Major John Doe during discovery, service will be attempted on those individuals, otherwise, the claims against them will be dismissed.

**IT IS, THEREFORE, ORDERED** that:

1. Plaintiff's Application to Proceed in District Court Without Prepaying Fees or Costs, (Doc. No. 2), is **GRANTED**.

2. The excessive force claims against Branch and Whitlock, the medical deliberate indifference claim against Dr. Flitt, the unwanted medical care claims against Branch, Hughes, Kim, and Whitlock, and the supervisory claims against Sheriff Cloniger survive initial review under 28 U.S.C. § 1915.

3. Plaintiff will be permitted to attempt service on Jane Doe 2, Jane Doe 3 and Major John Doe if Plaintiff is able to identify them during discovery, otherwise, the claims against them will be dismissed.

4. The Court will exercise supplemental jurisdiction over Plaintiff's North Carolina assault, battery, and negligence claims.

5. The remaining claims are dismissed pursuant to 28 U.S.C. § 1915(e)(2)(B)(ii).

6. **IT IS FURTHER ORDERED THAT** the Clerk shall direct the U.S. Marshal to

effectuate service on Defendants **FNU Whitlock** and **FNU Branch** with the summons forms attached to the Complaint. (Doc. No. 1-4 at 3, 6). The Clerk is further directed to mail summons forms to Plaintiff for Plaintiff to fill out and return for service of process on Defendants **Cloniger, Flitt, Hughes,** and **Kim**. Once the Court receives the summons forms, the Clerk shall then direct the U.S. Marshal to effectuate service on those Defendants. The Clerk is respectfully instructed to note on the docket when the forms have been mailed to Plaintiff.

Signed: September 7, 2018

Frank D. Whitney
Chief United States District Judge