UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NORTH CAROLINA
CHARLOTTE DIVISION
3:17-cv-485-FDW

| | |
|---|---|
| DANNY R. HEMBREE, JR., )<br> )<br> Plaintiff, )<br> )<br>vs. )<br> )<br>FNU BRANCH, et al., )<br> )<br> Defendants. )<br>_____)| **ORDER** |

**THIS MATTER** is before the Court on initial review of pro se Plaintiff's Amended Complaint, (Doc. No. 62). Plaintiff is proceeding in forma pauperis. (Doc. No. 9).

**I. BACKGROUND**

*Pro se* Plaintiff filed this civil rights suit pursuant to 42 U.S.C. § 1983 and North Carolina law while incarcerated at the North Carolina Department of Public Safety's (NCDPS) Central Prison.[1] The Complaint passed initial review on against Defendants Branch and Whitlock for the use of excessive force; against Defendant Flitt for medical deliberate indifference, against Defendants Branch, Hughes, Kim, and Whitlock for unwanted medical care, and the supervisory claims against Defendant Cloniger. The allegations were also sufficient as to several John Doe Defendants. The Court exercised supplemental jurisdiction over Plaintiff's North Carolina claims of assault, battery, and negligence against these Defendants. See (Doc. No. 7).

Plaintiff filed the instant Amended Complaint within the applicable deadline and it presently before the Court for initial review. See (Doc. Nos. 53, 58).

---

[1] Plaintiff is presently incarcerated at the Harnett Correctional Institution.

1

Plaintiff names as Defendants: Gaston County Sheriff Cloniger; Deputies Branch and Whitlock; Sergeant Hughes; Medical Director/Administrator Dr. Flitt; Nurse Kim Carter; Medical Department Deputy Jennifer A. Long; and Screening Nurse C. Allie.

Liberally construing the Amended Complaint and accepting the allegations as true, Plaintiff was transported from Central Prison to the Gaston County Jail on March 9, 2016. Plaintiff was questioned by the intake deputy, Sergeant Price, upon arriving at the Jail with regards to his health status and medical needs including medications. Plaintiff told Price that he has stage-4 liver disease, diabetes, neuropathy, and a heart ailment. He complained of shortness of breath, body aches, and pains. Price told Plaintiff that he would be seen by medical within a few days as a routine matter. NCDPS officers turned over Plaintiff's medications including Neurontin, which had been prescribed by Dr. Vincent Wilson at Central Prison, as well as the medical protocol instructing the Jail how and when to administer Plaintiff's medications. Plaintiff was issued Jail clothes and a bedroll and was assigned a cell by a classification officer.

Between one and three hours later, Plaintiff was escorted to medical for a routine intake screening by Nurse Allie. Nurse Allie told Plaintiff that Dr. Flitt had denied administration of Plaintiff's Neurontin used to treat Plaintiff's extremely painful neuropathy because it is one of the non-narcotic drugs that Flitt had banned from use in the Jail. Plaintiff asked for Ibuprofen or Tylenol for his body aches, pains, and low-grade fever. Allie told him that she would call Dr. Flitt to ask about Plaintiff's request but that they usually did not treat low-grade fever. Plaintiff was then escorted back to his cell.

Approximately 16 hours later, Plaintiff was advised over the intercom system by a female deputy that he needed to see the nurse in medical to have his sugar checked. Plaintiff told the deputy that he was he was refusing all medical treatment until Dr. Flitt approved the Neurontin.

2

The deputy said that Plaintiff could not refuse medical treatment because he was in jail. Plaintiff reiterated that he would continue to refuse all medical treatment at the Jail until Dr. Flitt agreed to administer the prescribed Neurontin.

Five or 10 minutes later, Deputies Branch and Whitlock entered Plaintiff's cell while he was lying passively on the bottom bunk. Branch and Whitlock told Plaintiff to get up because he was going to medical to see the nurse. Plaintiff stated that he did not need to see the nurse because he was refusing medical treatment until Dr. Flitt agreed to provide his prescribed medication. Branch and Whitlock grabbed Plaintiff by his arms, "violently snatched" him off of his bunk to a standing position, and deliberately forced him into the wall headfirst, causing a 3 ½ inch laceration to his eyebrow which bled profusely. (Doc. No. 62 at 6). This entire interaction took less than 30 seconds. Emergency medical care was needed to stop the bleeding. Plaintiff also suffered a large contusion on the right side of his face, eye, and injury to his neck and shoulder that had to be treated upon Plaintiff's return to Central Prison several days later. At no time did Plaintiff attempt to assault or batter Branch and Whitlock in any way or attempt harm any Jail employee. Plaintiff was handcuffed behind his back as his face bled profusely, was roughly handled, and forced by Branch and Whitlock to go to the medical department against his will where he was "further assaulted" by Nurse Kim Carter. (Doc. No. 62 at 8).

Sergeant Hughes (holding a digital camera), Deputy Jennifer A. Long, and Nurse Kim Carter were at the medical department when Plaintiff arrived there. Nurse Carter directed Deputies Branch and Whitlock to put Plaintiff in a chair where they forcefully restrained him. Nurse Carter cleaned and treated Plaintiff's facial laceration. Plaintiff was covered in blood was in a lot of pain which caused him to be emotional and loudly express his feelings by using profanity. Plaintiff told Nurse Carter that he was refusing all medical care, however, she said that he could not refuse and

3

that she had an obligation under the health codes to clean up the blood and stop the bleeding to prevent danger from blood-borne pathogens. Plaintiff said "fine, go ahead" but to stop bothering him after the wound was cleaned and stopped bleeding. (Doc. No. 62 at 9). Nurse Carter said she intended to check Plaintiff's vital signs and take a blood sample from his finger to check his sugar, but Plaintiff stated "no, your not, I do not consent to any further treatment, once your through cleaning my eyebrow." (Doc. No. 62 at 9). Nurse Carter put a blood pressure cuff on Plaintiff's arm against his will while he was handcuffed and restrained by Branch and Whitlock. Nurse Carter attempted to take Plaintiff's temperature but he refused to open his mouth. At this point, Plaintiff had informed Nurse Carter several times that he was making a competent, informed decision to refuse all medical treatment at the Jail due to their refusal to provide his prescribed medication. Nurse Carter threatened to have Branch and Whitlock strip him and restrain him while she took his temperature rectally if he would not cooperate. Plaintiff opened his mouth for Nurse Carter to take his temperature orally under duress. At this point, Nurse Carter went behind Plaintiff's back and pricked his finger for a blood test against Plaintiff's will. Plaintiff was forcefully escorted back to his cell by Branch and Whitlock, under the direct supervision of Sergeant Hughes.

Plaintiff remained at the Jail for approximately seven to 10 days after the assault, battery, and denial of medication. He continued to refuse medical care during that time but was not assaulted further. Dr. Flitt continued to refuse to follow Plaintiff's prescribed medical protocol and refused to dispense his medication, which resulted in extreme, intense, and unnecessary pain.

Plaintiff returned to Central Prison on March 17, 2016. At that time, he was screened by medical staff whom he advised that he had been assaulted, battered, and denied prescribed medication by the Gaston County Sheriff. Plaintiff was treated by his long-term primary care physician, Dr. Wilson, within 72 hours after he was referred to Central Prison's urgent care unit.

4

Dr. Wilson treated Plaintiff's neck, back, and facial injuries with ibuprofen and instructed him on how to help speed his recover and prevent further damage. Plaintiff was also started back on all of his medications including Neurontin for his extremely painful neuropathy. Plaintiff was later treated by mental health professionals for a sleep disorder, depression, anxiety, and PTSD that was exacerbated by the attack by Branch and Whitlock. Plaintiff is still suffering PTSD symptoms from their actions.

Plaintiff seeks declaratory judgment, injunctive relief, compensatory and punitive damages, a jury trial, any and all other relief that the Court deems proper.

## II.      STANDARD OF REVIEW

Because Plaintiff is a prisoner proceeding *in forma pauperis*, the Court must review the Complaint to determine whether it is subject to dismissal on the grounds that it is "(i) frivolous or malicious; (ii) fails to state a claim on which relief may be granted; or (iii) seeks monetary relief against a defendant who is immune from such relief." 28 U.S.C. § 1915(e)(2)(B). In its frivolity review, a court must determine whether the Complaint raises an indisputably meritless legal theory or is founded upon clearly baseless factual contentions, such as fantastic or delusional scenarios. Neitzke v. Williams, 490 U.S. 319, 327-28 (1989). A complaint should not be dismissed for failure to state a claim "unless 'after accepting all well-pleaded allegations in the plaintiff's complaint as true and drawing all reasonable factual inferences from those facts in the plaintiff's favor, it appears certain that the plaintiff cannot prove any set of facts in support of his claim entitling him to relief.'" Veney v. Wyche, 293 F.3d 726, 730 (4th Cir. 2002) (quoting Edwards v. City of Goldsboro, 178 F.3d 231, 244 (4th Cir. 1999)).

A *pro se* complaint must be construed liberally. Haines v. Kerner, 404 U.S. 519, 520 (1972); see also Smith v. Smith, 589 F.3d 736, 738 (4th Cir. 2009) ("Liberal construction of the

pleadings is particularly appropriate where … there is a pro se complaint raising civil rights issues."). However, the liberal construction requirement will not permit a district court to ignore a clear failure to allege facts in his complaint which set forth a claim that is cognizable under federal law. Weller v. Dep't of Soc. Servs., 901 F.2d 387 (4th Cir. 1990). A pro se complaint must still contain sufficient facts "to raise a right to relief above the speculative level" and "state a claim to relief that is plausible on its face." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555, 570 (2007); see Ashcroft v. Iqbal, 556 U.S. 662 (2009) (the Twombly plausibility standard applies to all federal civil complaints including those filed under § 1983). This "plausibility standard requires a plaintiff to demonstrate more than a sheer possibility that a defendant has acted unlawfully." Francis v. Giacomelli, 588 F.3d 186, 193 (4th Cir. 2009) (internal quotation marks omitted). He must articulate facts that, when accepted as true, demonstrate he has stated a claim entitling him to relief. Id.

## IV. DISCUSSION

**(1)** **Individuals Not Named as Defendants**

The Federal Rules of Civil Procedure provide that, "[i]n the complaint the title of the action shall include the names of all the parties." Fed. R. Civ. P. 10(a); see Myles v. United States, 416 F.3d 551 (7th Cir. 2005) ("to make someone a party the plaintiff must specify him in the caption and arrange for service of process."). Although pro se litigants are entitled to have their pleadings liberally construed, Haines, 404 U.S. at 520, "[d]istrict judges have no obligation to act as counsel or paralegal to pro se litigants," Pliler v. Ford, 542 U.S. 225 (2004).

The body of the Amended Complaint mentions individuals who are not named as defendants in the caption as required by Rule 10(a). This failure renders Plaintiff's allegations against them nullities. See, e.g., Londeree v. Crutchfield Corp., 68 F.Supp.2d 718 (W.D. Va. Sept.

6

29, 1999) (granting motion to dismiss for individuals who were not named as defendants in the compliant but who were served). Accordingly, the allegations against unnamed individuals will be dismissed without prejudice.

**(2)** **<u>Excessive Force</u>**

Claims that police officers used excessive force to seize a citizen, or were present and failed to intervene, are cognizable under § 1983.[2] <u>Graham v. Connor</u>, 490 U.S. 386 (1989); see <u>County of Los Angeles, Ca. v. Mendez</u>, 137 S.Ct. 1539, 1546 (2017) (<u>Graham</u> sets forth the "settled and exclusive framework for analyzing whether the force used in making a seizure complies with the Fourth Amendment."). Fourth Amendment jurisprudence "has long recognized that the right to make an arrest or an investigatory stop necessarily carries with it the right to use some degree of physical coercion or threat thereof to effect it." <u>Graham</u>, 490 U.S. 386, 396 (1989). Whether a use of force is "reasonable" under the Fourth Amendment requires balancing the nature and quality of the intrusion on the individual's Fourth Amendment interests against the countervailing governmental interests. <u>Tennessee v. Garner</u>, 471 U.S. 1, 7-8 (1985); <u>United States v. Place</u>, 462 U.S. 696, 703 (1983). Reasonableness is an "objective" inquiry that pays "careful attention to the facts and circumstances of each particular case" including "the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether he is actively resisting arrest or attempting to evade arrest by flight." <u>Graham</u>, 490 U.S. at 396. "The 'reasonableness' of a particular use of force must be judged from the perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight." <u>Id.</u>; <u>Saucier v. Katz</u>, 533 U.S. 194, 207 (2001), *overruled on other grounds by* <u>Pearson v. Callahan</u>, 555 U.S. 223

---

[2] It is unclear whether Plaintiff was an arrestee, pretrial detainee, or convicted and sentenced prisoner at the time of the incidents at issue. The Court has used the standard applicable for arrestees in this analysis, however, a different excessive force standard may prove applicable as the facts of the case are further developed.

(2009) (excessive force claims are evaluated for reasonableness based on the information the officers had when the conduct occurred); Scott v. United States, 436 U.S. 128, 137-39 (1978) (officer's subjective state of mind does not invalidate action as long as the circumstances, viewed objectively, justify it); Terry v. Ohio, 392 U.S. 1, 20-22 (1968) (reasonableness is viewed from the perspective of a reasonable officer on the scene without the benefit of hindsight). The reasonableness inquiry is dispositive: "When an officer carries out a seizure that is reasonable, taking into account all relevant circumstances, there is no valid excessive force claim." Mendez, 137 S.Ct. at 1547.

Plaintiff's allegations that Branch and Whitlock snatched him from his bunk and slammed him face-first into a wall are sufficient to proceed. However, the remainder of Plaintiff's allegations, *i.e.*, that he was held in a chair while Nurse Kim treated his laceration and checked his temperature and blood sugar, are insufficiently serious to state a claim for the use of excessive force. Moreover, Plaintiff fails to allege that any of the other Defendants were present and in a position to intervene when Branch and Whitlock slammed him into a wall.

Therefore, Plaintiff's excessive force claim will proceed against **Defendants Branch** and **Whitlock** and will be dismissed as to the remaining Defendants.

**(3)** **Medical Deliberate Indifference**

"[T]he treatment a prisoner receives in prison and the conditions under which he is confined are subject to scrutiny under the Eighth Amendment," Helling v. McKinney, 509 U.S. 25, 31 (1993). In its prohibition of "cruel and unusual punishments," the Eighth Amendment places restraints on prison officials, who may not, for example, use excessive physical force against prisoners. Hudson v. McMillian, 503 U.S. 1, 1 (1992).

A prison official violates the Eighth Amendment only when two requirements are met.

First, the deprivation alleged must be, objectively, "sufficiently serious," Wilson v. Seiter, 501 U.S. 294, 298 (1991); see also Hudson, 503 U.S. at 5, and must result in the denial of "the minimal civilized measure of life's necessities," Rhodes v. Chapman, 452 U.S. 337, 347 (1981). The second requirement is subjective and requires that a prison official must have a "sufficiently culpable state of mind." Wilson, 501 U.S. at 297, 302-03; Hudson, 503 U.S. at 5, 8. An actionable deliberate indifference claim does not require proof that the plaintiff suffered an actual injury. Instead, it is enough that the defendant's actions exposed the plaintiff to a "substantial risk of serious harm." Farmer v. Brennan, 511 U.S. 825, 837 (1994) (emphasis added). The official "must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." Farmer, 511 U.S. at 837; Johnson v. Quinones, 145 F.3d 164, 167 (4th Cir. 1998).

To state a claim of deliberate indifference to a serious medical need, a plaintiff must show that he had serious medical needs and that the defendant acted with deliberate indifference to those needs. Heyer v. United States Bureau of Prisons, 849 F.3d 202, 210 (4th Cir. 2017) (citing Iko v. Shreve, 535 F.3d 225, 241 (4th Cir. 2008)). A "serious medical need" is "one that has been diagnosed by a physician as mandating treatment or one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention." Iko, 535 F.3d at 241 (internal quotation marks omitted). To constitute deliberate indifferent to a serious medical need, "the treatment [a prisoner receives] must be so grossly incompetent, inadequate, or excessive to shock the conscience or to be intolerable to fundamental fairness." Miltier v. Beorn, 896 F.2d 848, 851 (4th Cir. 1990), *overruled on other grounds by* Farmer, 511 U.S. at 825. However, mere negligence or malpractice does not violate the Eighth Amendment. Miltier, 896 F.2d at 852.

9

Plaintiff alleges that Dr. Flitt and Nurse Allie failed to follow prescribed medical protocol and refused to administer Plaintiff's prescribed medication for extremely painful diagnosed condition or provide alternative medication.

These allegations are sufficient to proceed for deliberate indifference to a serious medical need by Defendants **Allie** and **Flitt**.

**(3)** <u>**Unwanted Medical Treatment**</u>

The Fourth Amendment protects "[t]he right of the people to be secure in their persons ... against unreasonable searches and seizures." U.S. Const. amend. IV. The applicability of the Fourth Amendment turns on whether "the person invoking its protection can claim a 'justifiable,' a 'reasonable,' or a 'legitimate expectation of privacy' that has been invaded by government action." <u>Hudson v. Palmer</u>, 468 U.S. 517, 525 (1984) (quoting <u>Smith v. Maryland</u>, 442 U.S. 735, 740 (1979)). A prisoner maintains some legitimate expectation of privacy in his person. <u>King v. Rubenstein</u>, 825 F.3d 206, 214 (4th Cir. 2016). A court is to consider the following factors to determine the reasonableness of a search: "the scope of the particular intrusion, the manner in which it is conducted, the justification for initiating it, and the place in which it is conducted." <u>Bell v. Wolfish</u>, 441 U.S. 520, 559 (1979).

Further, "a competent person has a constitutionally protected liberty interest in refusing unwanted medical treatment." <u>Cruzan v. Dir., Mo. Dep't of Health</u>, 497 U.S. 261, 278 (1990). This liberty interest survives conviction and incarceration. <u>Washington v. Harper</u>, 494 U.S. 210, 221–22 (1990) (recognizing an individual's "significant liberty interest in avoiding the unwanted administration" of a specific form of medical treatment); <u>Hogan v. Carter</u>, 85 F.3d 1113, 1116 (4th Cir. 1996) (*en banc*) (citing <u>Harper</u>, 494 U.S. 221–22). In this context, prison officials may override this right when treatment is "reasonably related to legitimate penological interests."

Harper, 494 U.S. at 223 (citing Turner, 482 U.S. at 89). The fit between the jail's legitimate interests and its policy need not be perfect in order to survive scrutiny, it need only be rational. Waterman v. Farmer, 183 F.3d 208, 215 (3d Cir.1999); see also Turner, 482 U.S. at 89-90 ("a regulation cannot be sustained where the logical connection between the regulation and the asserted goal is so remote as to render the policy arbitrary or irrational."). "This is true even when the constitutional right claimed to have been infringed is fundamental, and the State under other circumstances would have been required to satisfy a more rigorous standard of review." Harper, 494 U.S. at 223 (citation omitted).

Plaintiff alleges that Nurse Carter forcibly cleaned and closed his facial laceration, tested his blood sugar with a finger stick, and measured his temperature and blood pressure while Deputies Branch and Whitlock held him in a chair in the presence of Sergeant Hughes and Deputy Long.

Although there appears to be a rational penological justification for cleaning up blood and closing an open wound, the reasonableness and rational justification for forcing Plaintiff to undergo further procedures including a blood test, blood pressure, and temperature measurements are less clear at this early stage in the proceedings. Therefore, Plaintiff's claims that he was forced to undergo involuntary medical treatment shall proceed against **Defendants Branch, Carter, Hughes, Kim, Long,** and **Whitlock.**

**(4)** <u>**Supervisory Liability**</u>

A state official can be in a § 1983 suit in three ways: in his personal capacity, his official capacity, or in a more limited way, his supervisory capacity. King, 825 F.3d at 223–24. For personal liability, "it is enough to show that the official, acting under color of state law, caused the

deprivation of a federal right." Kentucky v. Graham, 473 U.S. 159, 166 (1985). In an official-capacity suit, however, "[m]ore is required:" the suit is "treated as a suit against the entity," which must then be a "'moving force' behind the deprivation," id. (quoting Polk County v. Dodson, 454 U.S. 312, 326 (1981)); thus, the entity's "'policy or custom' must have played a part in the violation of federal law," id. (quoting Monell v. Dep't of Soc. Servs. of City of New York, 436 U.S. 658, 694 (1978)). Meanwhile, a supervisor can be liable where (1) he knew that his subordinate "was engaged in conduct that posed a pervasive and unreasonable risk of constitutional injury;" (2) his response showed "deliberate indifference to or tacit authorization of the alleged offensive practices;" and (3) that there was an "affirmative causal link" between his inaction and the constitutional injury." Shaw v. Stroud, 13 F.3d 791, 799 (4th Cir. 1994) (internal quotation marks omitted).

Plaintiff alleges that Sheriff Cloniger failed to protect him from assault and battery by having policies in place to prevent assault and battery, failed to enforce policies or provide basic training of jail staff re right to refuse medical treatment, failed to have in place and/or enforce policy to assure that, when a prisoner refuses to leave the cell for any reason, a trained supervisor be present to prevent assault and battery by overzealous staff. This claim is sufficient to proceed against **Sheriff Cloniger**.

**(5)** **North Carolina Claims**

The district courts have supplemental jurisdiction over claims that are so related to the claims over which the court has original jurisdiction that they "form part of the same case or controversy under Article III of the United States Constitution." 28 U.S.C. § 1367(a). A court may decline to exercise supplemental jurisdiction if: (1) the claim raises a novel or complex issue of

state law; (2) the claim substantially predominates over the claim or claims over which the district court has original jurisdiction; (3) the district court has dismissed all claims over which it has original jurisdiction; or (4) in exceptional circumstances, there are other compelling reasons for declining jurisdiction. 28 U.S.C. § 1367(c)(1)-(4).

Plaintiff alleges that the Defendants committed assault and battery and negligence under North Carolina law. Because Plaintiff's North Carolina assault, battery, and negligence claims arise out of the same incidents that have passed initial review on federal claims of excessive force, medical deliberate indifference, and forcing him to undergo unwanted medical treatment, the Court will exercise supplemental jurisdiction over Plaintiff's North Carolina assault, battery, and negligence claims at this time.

V. **CONCLUSION**

For the reasons stated herein, the Complaint is sufficient to proceed against Defendants **Branch** and **Whitlock** for the use of excessive force; against Defendants **Allie** and **Flitt** for medical deliberate indifference; against Defendants **Branch, Carter, Hughes, Kim, Long,** and **Whitlock** for unwanted medical care; and the supervisory claims against Defendant **Cloniger**. The Court will also exercise supplemental jurisdiction over Plaintiff's assault, battery, and negligence claims against these Defendants. The remaining claims are dismissed pursuant to 28 U.S.C. 1915(e)(2)(B)(ii).

**IT IS, THEREFORE, ORDERED** that:

1. The Amended Complaint has passed initial review on Plaintiff's claims against Defendants **Branch** and **Whitlock** for the use of excessive force; against Defendants **Allie** and **Flitt** for medical deliberate indifference; against Defendants **Branch, Carter, Hughes, Kim, Long,** and **Whitlock** for unwanted medical care; and the supervisory

13

claims against Defendant **Cloniger**.

2. The Court will exercise supplemental jurisdiction over Plaintiff's North Carolina assault, battery, and negligence claims.

3. The remaining claims are dismissed pursuant to 28 U.S.C. § 1915(e)(2)(B)(ii).

4. **IT IS FURTHER ORDERED THAT** the Clerk of Court is directed to mail summons forms to Plaintiff for Plaintiff to fill out and return for service of process on the **Defendants Long** and **Allie**. Once the Court receives the summons form, the Clerk shall then direct the U.S. Marshal to effectuate service on these Defendants. The Clerk is respectfully instructed to note on the docket when the form has been mailed to Plaintiff.

Signed: May 3, 2019

Frank D. Whitney
Chief United States District Judge